Anthony KAFERLE, Joe Brandstetter, John Kristoff and Mike Kristoff

v.

Stephen FREDRICK, John Kosor and C. & F. Coal Company.

C. & F. Coal Company, Appellant.

No. 15620.

United States Court of Appeals Third Circuit.

Argued March 29, 1966.

Decided May 4, 1966.

Sanford M. Lampl, Pittsburgh, Pa., for appellant.

John S. Van Kirk, West Newton, Pa., for appellees.

Before STALEY, Chief Judge, GANEY, Circuit Judge, and SHERIDAN, District Judge.

STALEY, Chief Judge.

This suit was brought by four coal miners, members of the United Mine Workers of America, to recover wages they claim are owed to them by their employer, the C. & F. Coal Company.[1] Their complaint states two separate claims: (1) amounts due by reason of a differential between the wages they received for regular work and that to which they were entitled under their union contract; and (2) amounts due by reason of a differential between the wages they received for overtime work and that to which they were entitled both under the union contract and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.[2] After a non-jury trial, the district court found for the plaintiffs on both claims.

■ On this appeal, the appellant, the C. & F. Coal Company, raises two issues. Its first contention is that the district court erred in determining that appellees were engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act. In essence, it argues that there was insufficient evidence before the district court to support such a conclusion. Having

fully reviewed the record, we find substantial merit in this argument.

Gleaned from the record, the salient facts surrounding this dispute are as follows: The C. & F. Coal Company leased from the Commonwealth of Pennsylvania certain property located at the Mayview State Hospital, Mayview, Pennsylvania. The company operated a coal mine on this property and entered into a collective bargaining agreement with the United Mine Workers of America. From April 1, 1962 until March 31, 1964, the pertinent dates to this litigation, C. & F. sold $288,725.46 worth of coal. During this period, the primary purchaser was the Commonwealth of Pennsylvania; sales amounting to $225,638.63 were made to the state hospital at Mayview. Uncontradicted testimony also disclosed that of the remaining $63,000 in sales, all were presumably intrastate in nature except $2,300 worth. During April, May and June of 1962 appellant made sales to R. A. Pape, a coal broker, in the amount of $2,300. Though no testimony was offered which linked appellant's coal with Oswald & Hess Company and Armstrong Cork Company, there was testimony that Pape made sales to both companies and that both were engaged in the production of goods for interstate commerce. Other relevant testimony indicated that trucks bearing license plates from West Virginia and Ohio were frequently seen at appellant's coal tipple.

Unless a business falls within certain classifications established by Congress in 1961,[3] before an employee is covered by the Fair Labor Standards Act, it must be shown that he is either (1) engaged in interstate commerce, or (2) engaged in the production of goods for interstate commerce, or (3) (a variant of number

---

1. The district court found that C. & F. was a corporation and the employer of the plaintiffs. It therefore dismissed the complaint as to the individual defendants.

2. Plaintiffs rely primarily on § 16(b) of the FLSA, 29 U.S.C. § 216(b), to support their overtime claims since double

the amount due plus attorney's fees may be recovered thereunder.

3. The amendments made the Act applicable to all the employees of certain "enterprises" doing a certain volume of business. The "enterprise" provisions are not applicable here.

2) engaged in a "fringe" occupation which is closely related and directly essential to the production of goods for interstate commerce. 29 U.S.C. §§ 207(a)(1), 203(j); CCH Labor L.Rep., 1 Wages & Hours ¶ 25,101, at 37606.

The proof offered by appellees appears to be directed at satisfying the second and third criteria. To bring themselves within the second category, plaintiff-appellees would have to prove that the coal they produced was actually shipped in interstate commerce. To satisfy the third test they would have to show that the coal they produced, though shipped in intrastate commerce, was used by an interstate producer and that their work as miners was closely related and directly essential to the process of interstate production.

The only evidence bearing on the issue that appellant's coal was shipped in interstate commerce is that coal was loaded on trucks which bore out-of-state license plates. The district court found that this was sufficient, stating that "the inference is plain", apparently meaning that because the trucks were from out-of-state, they carried appellant's coal in interstate commerce. Without further evidence, we cannot agree. Though we believe it inferable that the trucks would eventually cross state lines, we cannot concur in the district court's inference that they would do so while carrying appellant's coal. We, therefore, find the inference speculative and clearly erroneous.

The other basis on which appellees apparently predicate FLSA coverage is that they qualify as "fringe" employees within the meaning of the Act. Though they do not specifically designate that their work falls into this category, this would appear to be the only relevance of the testimony of sales to Pape and the sales by him to Oswald & Hess and Armstrong Cork.

▇▇▇ Before this evidence can be evaluated properly, certain salient features of the Act should be delineated.

First, it is clear that Congress by enacting the Fair Labor Standards Act did not intend its coverage to be as broad as the commerce power itself. Walling v. Jacksonville Paper Co., 317 U.S. 564, 570, 63 S.Ct. 332, 87 L.Ed. 460 (1943); A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 522–523, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942). Prior to the 1949 amendments to the Act, the Supreme Court had stated that the fringe occupations had to have a close and immediate tie with the process of production to qualify for coverage under the Act. A. B. Kirschbaum Co. v. Walling, 316 U.S. at 525–526, 62 S.Ct. 1116. It was said that "[s]uch sales and services must be immediately available * * * or their production will stop" before the employees rendering the services or making available the products for such sales will fall within the Act's coverage. Roland Electrical Co. v. Walling, 326 U.S. 657, 664, 66 S.Ct. 413, 416, 90 L.Ed. 383 (1946). The 1949 amendments restricted the broad coverage which had been accorded "fringe" employees under § 3(j). In lieu of the Act's original criterion that their work be "necessary" to production, Congress substituted the requirement that their work must be "closely related" and "directly essential" to production. 29 U.S.C. § 203(j). Congress made clear, however, that "employees of public utilities, furnishing gas, electricity or water to firms within the State engaged in manufacturing, producing, or mining goods for commerce, will remain subject to the act." U.S.Code Cong.Service, 81st Cong., 1st Sess. at 2253. Thus, it would appear that pre-1949 precedents, that employees of a company which sells coal to an interstate producer are covered by the Act, have retained their vitality. See West Kentucky Coal Co. v. Walling, 153 F.2d 582, 584 (C.A. 6, 1946); Walling v. Northwestern-Hanna Fuel Co., 67 F.Supp. 833, 836–837 (D.Minn.1946). Those cases, however, involved direct shipments by the employer of the employees covered to the interstate producer. In this case there is no such thing. If, in fact, any of appellant's coal reached Oswald & Hess and

Armstrong Cork, it had to pass through an intermediary, namely, Pape. This alone defeats the requirements that such work must be "closely related" and "directly essential", especially since the sales were isolated and insubstantial. Cf. Interpretative Bulletin, 29 C.F.R. § 776.19.

■ We now turn to the second issue raised by appellant, that is, whether the appellees may properly utilize a federal forum to recover for breaches of their collective bargaining agreement.[4] The fashioning of a federal law of labor-management contracts engendered by Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972 (1957), leaves no doubt that such suits can be maintained. Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). However, the Supreme Court has stated that before § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, may be employed, the individual must process his complaint through the contract grievance procedure, if he and his complaint are covered by it. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Smith v. Evening News Association, 371 U.S. 196, at n. 1, 83 S.Ct. 267; compare Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), with Drake Bakeries Inc. v. Local 50, American Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). The record demonstrates that both appellees and their complaints of wage deficiencies are covered by the contract grievance procedure. It is also clear that these complaints were not processed through all the steps available. Not having exhausted their remedies under the contract, appellees are not free to sue on the contract under § 301.

The judgment of the district court will be reversed.

4. Appellant urges that suits for breach of a collective bargaining agreement are non-federal in nature. It then argues that such an action is not within the pendent

jurisdiction of the federal courts when combined with the FLSA claim. We do not reach the latter argument since such suits are not non-federal in nature.