W. Willard **WIRTZ**, Secretary of Labor, United States Department of Labor, Appellee,

v.

**DURHAM SANDWICH COMPANY, Inc., and Austin R. Pendergraft,** Appellants.

No. 10482.

United States Court of Appeals Fourth Circuit.

Argued June 24, 1966.

Decided Sept. 15, 1966.

Eugene C. Brooks, III, Durham, N. C., (E. C. Brooks, Jr., Durham, N. C., on brief), for appellants.

Caruthers G. Berger, Atty., Dept. of Labor (Charles Donahue, Sol. of Labor, Bessie Margolin, Associate Sol., Beverly R. Worrell, Regional Atty., Robert E. Nagle and Allen H. Sachsel, Attys., Dept. of Labor, on brief), for appellee.

Before SOBELOFF and J. SPENCER BELL, Circuit Judges, and LEWIS, District Judge.

SOBELOFF, Circuit Judge:

The District Court found that Carl Davis was "regularly and recurrently engaged in interstate commerce"[1] within the meaning of the Fair Labor Standards Act and ordered Durham Sandwich Co., his employer, to pay him overtime wages unlawfully withheld in the amount of $1,209.90.[2] The employer's appeal advances the argument that Davis was not "engaged in commerce."[3] After thoroughly reviewing the District Court's findings of fact and conclusions of law, we affirm.

Durham Sandwich Company, Inc., is a North Carolina corporation engaged in the manufacture and sale of sandwiches and in the wholesale distribution of cakes, pies, pastries and similar items to lunch counters and drug stores. Between April 5, 1963 and December 11, 1964, Davis was employed by Durham as plant

---

1. 259 F.Supp. 710 (M.D.N.C.1965).

2. Another employee, Nancy Lipscomb, about whom there is no dispute, was awarded $417.95 as unpaid minimum wages. Durham was also enjoined from future violations of the overtime compensation, minimum wage and record keeping provisions of the act.

3. 29 U.S.C. § 207(a) (1) (Supp. V 1964) (hereinafter referred to as the Act.)

manager. The District Court found that during this period Durham regularly received out-of-state shipments of goods eleven to twenty-three times per month, on an average of three to six times per week. As an integral part of his job, Davis unloaded these shipments from the trucks or carried them to the storeroom after they had been placed inside the plant by others. The District Court found that Davis spent approximately ½ hour per week, out of a work week of 59½ hours, performing these functions.

■■ These factual findings are amply supported by the record Durham contends that the invoices admitted in evidence do not indicate that the goods shipped were actually received. Although the record is not entirely clear, the District Court could reasonably and properly have found, particularly in view of Durham's admission that out-of-state goods have been received regularly each week since December 8, 1962, that the goods shipped were in fact received. Durham also maintains that Davis worked only an average of 45 hours per week. No documentary evidence was produced and the District Court's finding was based upon Davis' credited testimony. This was not error. Durham failed to keep any records of the time Davis worked. "In such a situation * * * an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). This standard was satisfied on trial.

■ Unloading and storing out-of-state shipments of goods, to be distributed later within the state, is sufficient to establish engagement in commerce under the Act. Temporary detention of the goods at Durham's plant does not end their interstate journey and they retain their character as being "in commerce." See Walling v. Jacksonville Paper Co., 317 U.S. 564, 568, 63 S.Ct. 332, 87 L.Ed. 460 (1943); McComb v. Herlihy, 161 F.2d 568 (4th Cir. 1947). The fact that only a small percentage of Davis' work week was spent in unloading and storing is not decisive. The doctrine of *de minimis* is not applicable where, as here, the services performed are regular and continuous and are essential to the movement of goods in commerce. See United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941); New Mexico Public Service Co. v. Engel, 145 F.2d 636, 640 (10th Cir. 1944); Davis v. Goodman Lumber Co., 133 F.2d 52 (4th Cir. 1943). Although Davis was primarily engaged in intrastate commerce, the District Court correctly held that he was entitled to the benefits of the Act for all hours worked. Durham made no attempt to segregate Davis' intrastate work from his interstate work and from this it follows, under the familiar rule, that all hours worked are covered by the Act. In Crook v. Bryant, 265 F.2d 541, 544 (4th Cir. 1959), Judge Soper said:

"In this circuit we have specifically held that an employee so engaged [work partly intrastate and partly interstate] is completely covered by the Act as to all of his activities when the two classes are commingled in the employer's operations and he makes no attempt to distinguish the two in the payment of wages." 265 F.2d at 544.

Since we conclude that Davis was engaged in commerce within the meaning of the Act, we find it unnecessary to consider whether he would also be covered under the 1961 Amendments, which broadened the Act's coverage to include employees who, while not individually engaged in commerce, are employed by an "enterprise" which is so engaged.[4]

Affirmed.

4. 29 U.S.C. § 207(a) (2) (Supp. V 1964).