W. Willard **WIRTZ**, Secretary of Labor, United States Department of Labor

v.

**F. M. SLOAN, INC.**, a corporation, Appellant.

No. 17439.

United States Court of Appeals Third Circuit.

Argued Feb. 4, 1969.

Decided May 13, 1969.

As Amended June 6, 1969.

Rehearing Denied June 11, 1969.

Robert D. Randolph, Houston, Cooper, Speer & German, Pittsburgh, Pa., for appellant.

Robert E. Nagle, U. S. Dept. of Labor, Office of the Solicitor, Washington, D. C., for appellee.

Before KALODNER, GANEY and SEITZ, Circuit Judges.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

This is an appeal from a Judgment of the United States District Court, Western District of Pennsylvania, permanently enjoining defendant-appellant, F. M. Sloan, Inc. ("Sloan"), from violating the minimum-wage and overtime provisions, §§ 6 and 7, of the Fair Labor Standards Act of 1938, as amended ("Act"), 29 U.S.C.A. § 201 et seq.,[1] and restraining Sloan from the withholding of a total of $2712.11, inclusive of interest, found by the court to be due to five employees as minimum wage and overtime compensation under the Act. The Opinion of the District Court is reported at 285 F.Supp. 669 (W.D.Pa.1968).

The District Court had jurisdiction over this action pursuant to 29 U.S.C.A. § 217.

The case concerns five employees of F. M. Sloan, Inc.,[2] a Pennsylvania corporation doing business only within the state of Pennsylvania. The question presented is whether the District Court erred in concluding that these five employees were covered by the Act and entitled, therefore, to the protection it provides. Sections 6 and 7 of the Act, 29 U.S.C.A. §§ 206, 207, extend its coverage to employees " * * * who in any workweek [are] engaged in [interstate] commerce or in the production of goods for [interstate] commerce * * *." Section 3(j), 29 U.S.C.A. § 203(j), provides that " * * * for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed * * * in any *closely related* process or occupation *directly essential* to the production thereof * * *."[3] (emphasis supplied)

■ During the period relevant to this action, December 13, 1964 to April 17, 1966,[4] Sloan was engaged in the production of natural gas from twenty-six wells owned or leased by it, all within the state of Pennsylvania. All of the gas so produced was sold, as required by contractual agreement, to The Peoples Natural Gas Company of Pittsburgh ("Peoples"), a Pennsylvania corporation. The gas was delivered on a continuous, almost daily basis from Sloan's pipeline

---

1. Plaintiff's Complaint also alleged a violation of the record-keeping provisions of § 211(c) and 215(a) (5) of the Act and 29 CFR 516, promulgated under the authority of the Act, as to all five of the employees involved. During the course of the proceedings, records were produced by defendant as to the hours worked by all of these employees with the exception of Hugh Torrance. Consequently, the charges as to record-keeping with respect to these individuals were dropped. Employee Torrance died on August 22, 1966, before the entry of the Order of Judge Marsh, making it unnecessary for the Order to contain any prohibition against further failure by defendant to keep records of this employee's activities.

2. By pre-trial Stipulation of the parties, part III (G), the five employees concerned are: William J. Creighton, Andrew Osloskey, Robert Schweinsburg, Harry C. Shaffer, and Hugh Torrance. Terry Baughman included in the original Complaint, was dropped from consideration.

3. Prior to the amendment of the Act in 1949 (63 Stat. 910, 911) this section read: " * * * if such employee was employed in * * * any process or occupation necessary to the production thereof, * * *." It is generally acknowledged that the purpose of the amendment was to restrict the scope of coverage of the Act as to "fringe" activities and to make it clear that the Act was not intended to reach as far as the constitutional limits of Congress' commerce power. Mitchell v. H. B. Zachry Co., 362 U.S. 310, 312–313, 80 S.Ct. 739, 4 L.Ed. 2d 753 (1960); Kaferle v. Frederick, 360 F.2d 536, 538 (3 Cir. 1966); Mitchell v. Jaffe, 261 F.2d 883, 886 (5 Cir. 1958).

4. The Complaint was filed December 13, 1966. The parties have agreed by Stipulation, part III(K), that the two-year statute of limitations of 29 U.S.C.A. §§ 217, 255 shall be applied.

into a Peoples' pipeline, where it was commingled with much larger quantities of gas produced by Peoples' own wells and those of other producers who sold to Peoples. The District Court found, and it is undisputed, that it would be impossible to trace any particular cubic foot of gas back to its source once it had merged with the other gas in Peoples' pipelines. We agree with the District Court's conclusion that it is not "essential to coverage that any particular cubic foot of defendant's gas should be so traced." D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 121, 66 S.Ct. 925, 90 L.Ed. 1114 (1946); Mitchell v. Jaffe, 261 F.2d 883, 887 (5 Cir. 1958).

Although Peoples did not sell or deliver gas to customers located outside the state of Pennsylvania, and thus was not *directly* involved in interstate commerce, it did distribute a large percentage of the gas in its pipelines on a daily basis to the mills of Braeburn Alloy Steel Company at Braeburn, Pennsylvania, and Allegheny-Ludlum Steel Corporation at Brackenridge, Pennsylvania and approximately 95 percent of the gas so delivered was utilized in producing steel products of which 85 to 90 percent was shipped in interstate commerce on a regular basis. It is settled that, under the facts as outlined above, the employees of Peoples, regardless of the nature of the work they performed, would fall within the coverage of the Act because of their engagement in a "closely related process or occupation directly essential to the production" of goods for interstate commerce. See Wirtz v. Idaho Sheet Metal Works, Inc., 335 F.2d 952 (9 Cir. 1964), aff'd 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed. 2d 694 (1966), reh. den. 383 U.S. 963, 86 S.Ct. 1219, 16 L.Ed.2d 305, 306; Mitchell v. Independent Ice and Cold Storage Company, 294 F.2d 186 (5 Cir. 1961), cert. den. Independent Ice & Cold Storage Co. v. Goldberg, 368 U.S. 952, 82 S.Ct. 394, 7 L.Ed.2d 386 (1962); Mitchell v. Mercer

Water Co., 208 F.2d 900 (3 Cir. 1953), aff'g Durkin v. Mercer Water Co., D. C., 112 F.Supp. 656.

In deciding whether the employees of Sloan are covered by the Act, the critical issue is whether the fact that the gas is first sold to an independent "middleman" (Peoples) and then resold to the steel companies sufficiently "insulates" Sloan from the production of goods; so that the activities of its employees do not meet the "closely related" and "directly essential to" test.

Since the Supreme Court has ruled that in applying the Act "we focus on the activities of the employees and not on the business of the employer," Mitchell v. Lublin, McGaughy & Assoc., 358 U.S. 207, 211, 213, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959), the nature of the work done by the employees here involved and its direct relation to the production of gas is critical. The District Court found that employees Schweinsburg, Shaffer, Osloskey and Creighton regularly, on an hourly basis, checked and recorded the readings on various metering gauges on Sloan's pumps and performed routine maintenance services on the machinery, specifically the adding of oil to the pump engines. These activities consumed only a small portion of each work-hour of the employees; but they were performed on a regular and recurring basis. The regularity of these gas-producing activities was viewed as a key factor by the District Court, and it said:

> " * * * in my opinion the de minimis doctrine does not apply to regular and recurring work, and such need not be substantial timewise." (citing Wirtz v. Durham Sandwich Company, 367 F. 2d 810 (4 Cir. 1966).) 285 F.Supp. at 672.

The remainder of the employees' working time was spent on various tasks connected with the operation of a pine tree nursery and a hothouse owned by Sloan.[5]

---

5. For the above work, these four employees were paid $1.00 per hour with no additional pay for overtime work, at a time when the Act prescribed a minimum regular wage of $1.25 per hour with 1½ pay for work in excess of forty hours per

Sloan contends we are bound by this Court's decision in Kaferle v. Frederick, 360 F.2d 536 (3 Cir. 1966), to conclude that the five employees here in question are not covered by the Act. In *Kaferle*, suit was brought by four employees to recover amounts alleged to be due them as employees covered by the Act. There, the defendant employer was engaged in the mining of coal within the state of Pennsylvania. All the coal was sold by the defendant to customers within the state, resulting in total sales of $288,725.46 during the relevant period. Of this amount, $2,300 of the sales was to a coal broker, Pape, who, in turn, sold coal to two industrial concerns in Pennsylvania which used it as fuel in the production of goods for interstate commerce. It was contended by plaintiff-employees that, as a result of the indirect sales to producers of goods for interstate commerce, they were "engaged in a 'fringe' occupation which is closely related and directly essential to the production of goods for interstate commerce." 360 F.2d at 538. This court held that there was no coverage under the Act, saying:

" * * * [i]f, in fact, any of appellant's [employer's] coal reached [the producers of goods for interstate commerce], it had to pass through an intermediary, namely, Pape. This alone defeats the requirements that such work must be 'closely related' and 'directly essential', especially since the sales were isolated and insubstantial." 360 F.2d at 538–539.

Sloan contends that Peoples is the "middleman" counterpart in the instant case of the coal broker in *Kaferle*.

We are of the opinion that *Kaferle* is inapposite here. There, only an "insubstantial" part, less than one percent of the coal was sold to the middleman broker and these sales were "isolated", viz., made on a non-recurring basis. There is no in-dication that a large part of the broker's sales was to the concerned two producers for interstate commerce. In *Kaferle*, the connection between the employees' activity and interstate commerce was tenuous indeed. In sum, it was not the mere presence of an intermediary, but, rather, that factor coupled with the "isolated and insubstantial" nature of the sales connected with interstate commerce which resulted in the holding in *Kaferle* that that the Act did not apply.

The factual situation here is quite different. The *entire* output of these wells was sold to Peoples on a *regular* basis and under a contract(s) which bound Sloan not to sell to anyone else. A *large* percentage of Peoples' gas was sold to the producers for interstate commerce, and *almost all* of this gas was utilized in producing those goods, *most* of which regularly moved into interstate commerce. The sales in this connection were not "isolated and insubstantial", but regular and recurring and accounted for the *totality* of Sloan's income from gas production.

In Mitchell v. Jaffe, 261 F.2d 883 (5 Cir. 1958) it was held that four employees engaged by defendant-employer in the stripping of salable parts from wrecked automobiles and the handling of the scrap metal residue were covered by the Act when that scrap was sold by defendant to an independant intermediary who, in turn, resold this scrap to local steel mills which used it in the production of goods for interstate commerce. The sales to the intermediary constituted only a minimal percentage of defendant's gross receipts, but the court considered this point immaterial. It focused on the fact that "the scrap moved to [the intermediary] as a regular non-sporadic part of the Employer's general operation of its business * * *." and declared that " * * * it matters not that the annual

---

week. 29 U.S.C.A. § 206(a) (1), as amended 1961, Pub.L. 87–30, § 5(a) (2), 75 Stat. 65, and § 207(a) (1). The court also found that Hugh Torrance, the fifth employee in question, acted as the foreman or supervisor of the other em-ployees mentioned and that he was paid for this a salary of $425 per month, an amount which fell below minimum wage levels when his normal work-hours per week were considered.

tonnage (100 tons) was slight, or that in dollars it was but 1.67% of the Employer's annual volume of sales." 261 F.2d at 887.

We agree with the District Court's holding at 285 F.Supp. 673 that "Under the facts disclosed, * * * it is immaterial that defendant sold its gas to Peoples instead of directly to the steel mills."

In D. A. Schulte, Inc. v. Gangi, supra, it was said:

> "Mere separation of the economic processes of production for commerce between different industrial units, *even without any degree of common ownership*, does not destroy the continuity of production for commerce. Producers may be held to know the usual routes for distribution of their products." 328 U.S. 121, 66 S.Ct. 931. (emphasis supplied).

■ There remains Sloan's contention that the District Court erred in ruling that Sloan could not, seven months after trial, for the first time, claim the exemption for forestry operations provided by Section 13(a) (15) of the Act (29 U.S. C.A. § 213(a) (15)[6].) The contention is without merit. Systems Incorporated v. Bridge Electronics Company, 335 F.2d 465, 466 (3 Cir. 1964).

Moreover, we cannot say that the District Court erred in its holding that " * * even if we assume that the affirmative defense has been raised properly, the evidence brought out on cross-examination was insufficient to prove that defendant's employees were exempt under the operative specifications of section 13 (a) (15)", and, "The defendant failed to sustain its burden in this respect." (285 F.Supp. 675).

For the reasons stated the Order of the District Court will be affirmed.

6. The exemption provision was amended and redesignated as Section 13(a) (13) by the Fair Labor Standards Amend-

ments of 1966 (80 Stat. 830), which became effective February 1, 1967.