**George P. SCHULTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Paul PONSETTO and Domenic Ponsetto, individually and as co-partners doing business as Wilmerding Bottling Works, Defendants.**

**Civ. A. No. 68–834.**

United States District Court, W. D. Pennsylvania.

Feb. 4, 1970.

John H. Bingler, Jr., Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

J. Weinman Cratty, William M. Acker, Pittsburgh, Pa., for defendants.

## OPINION

GOURLEY, Senior District Judge.

In this civil action, the Secretary of Labor, as plaintiff, seeks to enjoin the defendants from alleged violations of the minimum wage, overtime and record keeping provisions of the Fair Labor Standards Act.[1] The Court is requested to enjoin defendants from the withholding of wages and interest allegedly owing seventy-six individuals employed by defendants during the period from January 1, 1966 to March 6, 1968 and also from violating in the future the aforementioned provisions of the Fair Labor Standards Act. A non-jury trial has been conducted, the pleadings, briefs and record have been reviewed, and the Court is of the opinion that the relief requested by the Government should be denied.

For forty-six years, the individual defendants, as partners, have engaged primarily, if not exclusively, in the business of bottling carbonated beverages at their plant location in Allegheny County, Pennsylvania, for purposes of selling the bottled beverages within the Allegheny County area.[2] For thirty years, defendants have purchased from Glenshaw Glass Company glass bottles to be used as containers for defendants' carbonated beverages. For many years, both prior to and including the 1966–1968 period in question, Glenshaw was defendants' sole supplier of glass bottles.

Although defendants, during the course of their continuing business relationship with Glenshaw, had received some bottles in a broken condition and suffered breakage of others on their bottling line, they did, at no time prior to 1966, return broken glass, or "cullet" as it is known in the trade, to Glenshaw or receive credit for the same. However, in early 1966, Glenshaw altered the size of its bottle and, at the same time, reduced its strength, with the consequence that defendants began to receive a substantially increased number of cracked bottles upon delivery by Glenshaw and also began to experience substantially increased bottling line breakage with the new bottles.

In an effort to accommodate an old and reliable customer, Glenshaw arranged in 1966 to remove with its own trucks from defendants' plant, broken glass or "cullet", which defendants gathered in barrels, and to afford defendants a credit upon the purchase of future bottles in the sum of ten dollars per ton of collected broken glass.

This arrangement began in early 1966, and continued until April of 1968, when it was permanently discontinued. During this period, all but one of the seventy-six employees[3] listed in plaintiff's Pre-trial Statement engaged for fifteen to thirty minutes per day in gathering

---

1. Sections 206, 207 and 211(c), respectively, of Title 29, United States Code.

2. During the years 1966–1968, and presumably for some time prior thereto, defendants operated under franchise from Mission Beverages.

3. Defendants ordinarily employ from twenty-six to thirty individuals at a given time, a number of whom work after school or during the summer while school is not in session.

bottles received in a cracked condition and glass having broken on the bottling line, which said employees then deposited in barrels to await pickup by Glenshaw. Also during this period, Glenshaw regularly removed from defendants' plant an approximate total of 80 tons of broken glass or "cullet" and, for the same, granted defendants credit in the sum of $771.35 upon the future purchase of bottles. In 1966 and 1967 defendants purchased $37,679 and $32,239.58 worth of glass bottles from Glenshaw.

Glenshaw manufactures its bottles in a large plant in the area of Allegheny County, Pennsylvania, as well as in a plant in Orangeburg, New York. Sixty per cent of the bottles which Glenshaw manufactures in Pennsylvania are sold interstate, the rest being sold intrastate. In any given "batch" of glass prepared by Glenshaw for making bottles, Glenshaw introduces broken glass or "cullet" comprising about fifteen per cent of the total batch. It is not necessary for Glenshaw to introduce broken glass or "cullet" into a batch of glass, but Glenshaw, nevertheless, does so.

In Glenshaw's own manufacturing operation, Glenshaw rejects for defects and flaws ten to fifteen per cent of the bottles made by it. Glenshaw uses these rejects as "cullet". Consequently, Glenshaw generally did not seek to purchase from independent sources or collect from its customers for credit broken glass or "cullet" for introduction into its manufacturing process, as long as it had an adequate supply of its own. However, in the 1966–1968 period in question, which immediately followed Glenshaw's reduction in the strength of its bottles, Glenshaw removed broken glass or "cullet" from a number of its customers, including defendants, as a "sales promotion device".

On the basis of the foregoing, it is the Government's contention that during the period in question defendants' employees were engaged in the "production of goods" for interstate commerce or, alternatively, employed in a "closely related process or occupation directly essential to" such production, thereby subjecting defendants to the application of the Fair Labor Standards Act.[4] It is the Court's conclusion that the facts of this case do not justify this characterization.

Defendants were engaged in the enterprise of producing carbonated beverages for intrastate sale. They purchased glass containers for their product from a local supplier, Glenshaw. There is no evidence that defendants' enterprise, at any time, encompassed within its scope the collection of empty bottles, broken glass, or cullet from any sources independent of Glenshaw for disposition to Glenshaw or any others engaged in production of glass for interstate commerce. Because defendants engaged in no such activities of this nature, the instant case is factually distinguishable from the case of Wirtz v. Craig, (W.D.N.Car. 1963), 48 Lab.Cas. (CCH) Para. 31,531.

Also, there is no indication that defendants, prior to January 1, 1966 or subsequent to March 6, 1968, integrated into their business operations any operation of collecting broken glass or "cullet" which could be regarded as a by-product of their own production, for disposition to glass manufacturers dealing in interstate commerce. See Wirtz v. F. M. Sloan, Inc., 411 F.2d 56 (3d Cir. 1969).

The Court finds that the arrangement between defendants and Glenshaw during the period in question did not alter the character of defendants' enterprise so as to add to it any facet of production beyond the production of carbonated beverages for local sale. Nor did said arrangement result in a brief engagement of defendants' employees in the production of goods for commerce or in a "closely related process or occupation directly essential to" such production.

4. 29 U.S.C. § 203(j).

In so finding, the Court relies upon the very particular circumstances giving rise to the new arrangement. To an old and faithful local customer, Glenshaw began in early 1966 to supply to defendants a glass bottle weakened to the extent that increased breakage occurred both before the bottles were ever placed on defendants' bottling line and after they were placed upon the machinery of defendants which was intended to carry them. Defendants suffered a loss as a result of this change in the quality of its sole supplier's product and it is wholly understandable that compensation was provided through an accommodation between Glenshaw and defendants rather than by suit.

The compensation provided by Glenshaw was given in the form of credit and services, the service being to remove with its own trucks its own unusable product from defendants' plant. As Mr. Robert Kay, District Sales Manager for Glenshaw, testified, Glenshaw chose to collect broken glass or "cullet" from its local bottler-customers in 1966 and 1967 as a sales promotion device, and the strong inference which the Court draws from the statement is that Glenshaw, by doing so, was making good to its local customers for increased breakages experienced with its new bottles.

Mr. Crawford, President of Glenshaw, also testified to the effect that the introduction of broken glass into a batch of glass was not deemed necessary by Glenshaw and that the collection of broken glass from others was even less necessary because Glenshaw had available at its own plant sufficient cullet resulting from its production.

■ Accordingly, the Court concludes that the employees collecting broken glass in defendants' plant were engaged in the last stages of a transaction which was in substance local, the return of goods produced for local consumption by Glenshaw, but which were found unsatisfactory by defendants and upon which credit was granted. That bottles broken on defendants' line as well as those cracked when received were returned is in no way inconsistent with the conclusion that defendants were merely returning unsatisfactory goods, both by rejection upon receipt of the goods and by revocation of acceptance of those which contained latent defects discoverable only on the bottling line. Because defendants' purchase of bottles and return of broken ones was from and to a local manufacturer, the instant case is distinguishable from the case of Shoemake v. Gainesville Nehi Bottling Co., Inc., (N.D.Ga.1967), 55 Lab.Cas. (CCH) Para. 31,898.

In these circumstances, the Court concludes that defendants were not indirect participants in the later production by Glenshaw of glass bottles, some of which most likely would have been sold by Glenshaw in interstate commerce. The Court also concludes that defendants' employees, in gathering the pieces of the cracked and broken bottles produced by Glenshaw, were no more employed in a "closely related process or occupation directly essential to" production in commerce than engaged in the production of goods for such purpose.

■ The provisions of the Fair Labor Standards Act must be applied on an ad hoc basis to the given facts of each case. In the instant case, the collection of glass by defendants for return and credit was, in substance and not merely form, an integral part of Glenshaw's production of goods for local consumption.

With respect to the Government's contention that defendants violated the record keeping provisions of 29 U.S.C. § 211(c), the record is deficient of evidence to sustain such a contention.

For the reasons set forth above, the Court denies the request for injunctive relief, both as to the withholding of wages, which the Court finds are not due, and as to any potential future violation of the Fair Labor Standards Act, which the Court presently has no reason to anticipate.

Defendants acknowledged at trial that they are currently subject to the Fair Labor Standards Act by virtue of falling within the coverage of recently effective

Amendments. It seems almost unnecessary to say that, should they now fail to comply with each and every obligation now imposed upon them by the Act, the Government most certainly may seek recourse against them in this Court.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, this Opinion shall constitute the Court's Findings of Fact and Conclusions of Law.

An appropriate Order is entered.