JANE DOE, Plaintiff-Appellant, v. JOHN ROE *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—95—3966

Opinion filed May 23, 1997.—Rehearing denied July 1, 1997.

Northwestern University Legal Clinic, of Chicago (John S. Elson, of counsel), for appellant.

Hinshaw & Culbertson, of Chicago (Thomas P. McGarry and Bruce L. Carmen, of counsel), for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, using the pseudonym Jane Doe, filed suit against the defendant and his law firm, under the respective pseudonyms of John Roe and Roe & Roe, claiming that John Roe (hereinafter defendant) coerced her into a sexual relationship with him while he represented her in an action for dissolution of marriage. The circuit court dismissed the plaintiff's action for failure to state a claim on which relief could be granted (735 ILCS 5/2—615 (West 1994)). The plaintiff now appeals from that dismissal and from the denial of her petition for sanctions under Supreme Court Rule 137 (134 Ill. 2d R. 137). The defendant cross-appeals from the denial of his petition for Rule 137 sanctions.

The plaintiff's first-amended complaint charged the defendant and his law firm with breach of fiduciary duty, intentional infliction of emotional distress, negligent infliction of emotional distress, and fraud. The court dismissed that complaint under Code of Civil Procedure section 2—615 (735 ILCS 5/2—615 (West 1994)), but instructed the plaintiff to replead her claim for breach of fiduciary duty. The plaintiff's second-amended complaint was stricken by agreement of the parties. Her third-amended complaint, pled in two counts, sought recovery against the defendant on a breach of fiduciary duty theory, and against his law firm based on *respondeat superior*. The court then dismissed the third-amended complaint under section 2—615, and this appeal followed.

Initially, we address the plaintiff's contentions that the court erred in dismissing her claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and fraud as set forth in her first-amended complaint.

A party who files an amended complaint waives any objection to the court's ruling on prior complaints. *Boatmen's National Bank v. Direct Lines, Inc.*, 167 Ill. 2d 88, 99, 656 N.E.2d 1101 (1995); *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153, 449 N.E.2d 125 (1983). An amended complaint must reallege, incorporate by reference, or at least refer to the claims and supporting facts set forth in a prior complaint in order to preserve for review the question of the propriety of the court's rulings in relation to the prior complaint. See *Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108, 113-14, 664 N.E.2d 267 (1996). The supreme court has rigidly enforced this rule, twice rejecting the notion that dismissed claims that are not reasserted may, nonetheless, be reviewed where the plaintiff did not manifest an intention to abandon those claims. See *Boatmen's*, 167 Ill. 2d at 100; *Foxcroft*, 96 Ill. 2d at 153. It makes no difference that the plaintiff clearly expressed a desire not to

abandon the claims or that the trial court mistakenly assured the plaintiff that prior claims would be preserved even though they were not realleged. See *Boatmen's*, 167 Ill. 2d at 100; see also *Tabora*, 279 Ill. App. 3d at 114. A party desiring to preserve for review the dismissal of claims contained in a former complaint has only two choices: she may either stand on the dismissed counts and challenge the ruling at the appellate level *prior to* filing an amended complaint or reallege the dismissed counts in subsequent complaints. *Du Page Aviation Corp. v. Du Page Airport Authority*, 229 Ill. App. 3d 793, 800, 594 N.E.2d 1334 (1992).

■ In this case, the plaintiff's third-amended complaint never realleged, incorporated, or referred to the claims for intentional infliction of emotional distress, negligent infliction of emotional distress, or fraud set forth in her first-amended complaint. In an apparent attempt to preserve these counts, the plaintiff obtained an order from the trial judge that the claims in the second-amended complaint would be treated as repleaded for purposes of appeal. We note initially that the second-amended complaint, like the third-amended complaint, contained only a breach of fiduciary duty claim; but in any event, the court's order purporting to treat the second-amended complaint as repleaded was without legal effect. *Boatmen's*, 167 Ill. 2d at 100. We are constrained to treat as waived all issues relating to the dismissal of any claims other than that for breach of fiduciary duty as set forth in the third-amended complaint. For the same reasons, the plaintiff has waived her contention that the court erred in striking her request for punitive damages, which was never reasserted after the second-amended complaint.

■ Because the plaintiff's third-amended complaint (hereinafter complaint) was dismissed pursuant to a section 2—615 motion, the question before this court is whether her claim for breach of fiduciary duty set forth a cause of action upon which relief could be granted. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 565 N.E.2d 654 (1990); *Janes v. First Federal Savings & Loan Ass'n*, 57 Ill. 2d 398, 312 N.E.2d 605 (1974). Since the question is one of law, our review is *de novo*. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 634 N.E.2d 306 (1994). In conducting that review, we are required to take all well-pleaded facts in the complaint as true and draw reasonable inferences from those facts that are favorable to the plaintiff. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 566 N.E.2d 1365 (1991). We are also guided by the admonition that an action should not be dismissed on the pleadings unless it is apparent that no set of facts can be proven that would entitle the plaintiff to recover. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 639 N.E.2d 1282 (1994).

The factual allegations contained in the complaint relate the following scenario. The plaintiff was involved in an emotionally trying divorce that included ongoing concerns over the custody of her child. In spring of 1983, she was introduced to the defendant, who assured her that he could represent her more effectively than the attorney she had engaged. The defendant also promised to help secure a rapid settlement of her case. Based upon these statements, the plaintiff engaged the defendant and, in July of 1983, paid him a retainer of $7,500. The defendant did not furnish the plaintiff with a written fee agreement but orally stated that any additional legal fees would be borne by her husband, who was believed to possess substantial assets. The plaintiff alleged that she lacked significant financial resources and would not have employed or continued to employ the defendant had she known that she would be required to pay additional attorney fees.

During the course of the representation, the plaintiff discussed her emotional and sexual history with the defendant, including her anxiety over the divorce, and came to rely upon the defendant's advice on both legal and personal matters. During one of the plaintiff's initial visits to the defendant's office, the defendant began making unwanted sexual advances towards her. He persisted in fondling the plaintiff despite her attempts to resist and told the plaintiff that this would make it "much easier" for her. The plaintiff alleged that she submitted to the defendant's sexual demands out of fear that he would discontinue or compromise his representation of her if she did not comply and because she could not afford to pay the retainer for another attorney. Thereafter, the defendant made repeated sexual demands on the plaintiff. According to the plaintiff, she continued to engage in sexual relations with the defendant because she had become very dependent upon him for legal as well as emotional support.

In May 1985, the plaintiff's former husband walked into the bedroom of the plaintiff's home while she and the defendant were engaged in sexual relations. The plaintiff's former husband became outraged and later indicated that he would not pay any of the plaintiff's attorney fees. According to the plaintiff, after learning of this pronouncement, the defendant failed to seek payment of her attorney fees from her former husband, fearing personal embarrassment and potential professional discipline.

In June 1985, while the parties were in court awaiting a hearing, the defendant presented the plaintiff with a proposed settlement agreement and instructed her to sign the document without apprising her of its terms. The plaintiff contended that she did so, unaware

that it included provisions enabling the defendant to procure a $2,500 judgment against her for his fees and granting the defendant a lien on her home as security. On July 30, 1985, the defendant obtained the judgment against the plaintiff.

In May 1986, the plaintiff received correspondence from the defendant's firm requesting $2,500 for services rendered. The letter noted that this sum was in addition to the $4,000 she already owed and threatened that if she did not pay the balance, she might be subjected to "some slight injury." The letter also stated that if the plaintiff did not wish to pay her bill in full, the defendant would be willing to work out " 'other ways' " for payment, and would be " 'in touch' " with her soon. The plaintiff interpreted the letter to mean that unless she continued her sexual relationship with the defendant, she would be subjected to additional demands for attorney fees that would be extremely difficult for her to pay. The plaintiff discussed the matter with the defendant, who insisted that she pay the fees, and told her that she actually owed him $40,000. According to the plaintiff, after she agreed to continue her sexual relationship with the defendant, he executed a satisfaction and release of the $2,500 judgment.

When the plaintiff subsequently began having difficulty enforcing the terms of her dissolution judgment, the defendant agreed to represent her on the "same terms" as in the past. Based upon the defendant's failure to ask for any additional fee, the plaintiff interpreted this statement as a demand for her continuance of sexual relations. The plaintiff terminated her employment of the defendant in early 1989 and commenced the instant action.

On appeal, the plaintiff contends that the court erred in dismissing her claim for breach of fiduciary duty, which sought pecuniary damages as well as additional damages for severe emotional distress.

■ A fiduciary relationship exists between an attorney and his client as a matter of law. *In re Imming*, 131 Ill. 2d 239, 252-53, 545 N.E.2d 715 (1989). Once established, the attorney-client relationship gives rise to certain duties owed by the attorney to the client without regard to the specific terms of any contract of engagement. Among the fiduciary duties imposed upon an attorney are those of fidelity, honesty, and good faith in both the discharge of contractual obligations to, and professional dealings with, a client. See *Metrick v. Chatz*, 266 Ill. App. 3d 649, 656, 639 N.E.2d 198 (1994). When, in the course of his professional dealings with a client, an attorney places personal interests above the interests of the client, the attorney is in breach of his fiduciary duty by reason of the conflict. *In re Rosin*, 118 Ill. 2d 365, 515 N.E.2d 85 (1987). Breach of fiduciary duty by an attorney

gives rise to an action on behalf of the client for proximately resulting damages. *Bauer v. Hubbard*, 228 Ill. App. 3d 780, 785, 593 N.E.2d 569 (1992).

In this case, the plaintiff retained the defendant to act as her attorney in an action for dissolution of marriage and paid him a $7,500 retainer fee. In addition, she had paid her prior attorney $9,350 in fees for his work on the same dissolution proceedings. The complaint alleges that the plaintiff had limited financial resources compared to the substantial assets possessed by her former husband, yet the defendant failed to seek reimbursement of the plaintiff's legal fees from her former husband. According to the complaint, the defendant's failure to do so was based upon his fear of personal embarrassment and potential professional discipline if the plaintiff's former husband raised the defendant's sexual relationship with the plaintiff in response to a fee petition.

Section 508 of the Illinois Marriage and Dissolution of Marriage Act authorizes the court, after considering the financial resources of the parties, to order one spouse to pay the reasonable attorney fees incurred by the other spouse in the maintenance or defense of a dissolution of marriage action. 750 ILCS 5/508 (West 1994). Whether the plaintiff would have been successful in obtaining an order requiring her former husband to reimburse her for all or a portion of the $16,850 in fees she paid her attorneys is a matter upon which the plaintiff will bear the ultimate burden of proof. For pleading purposes, however, the complaint sets forth sufficient facts to support the conclusion that the plaintiff had a viable claim for reimbursement of attorney fees in her dissolution action, which the defendant failed to pursue.

■ There is little question that the complaint adequately pled the existence of an attorney-client relationship between the plaintiff and the defendant. If, as alleged, the defendant declined to pursue the plaintiff's right to seek reimbursement of her attorney fees from her former husband out of fear of personal embarrassment and potential professional discipline, he breached his fiduciary duty by placing his personal interests above the interests of his client. Further, at least to the extent of the $16,850 in attorney fees that the plaintiff actually paid, and for which the defendant failed to seek reimbursement, the complaint alleged damages proximately resulting from the defendant's breach of fiduciary duty. Since the plaintiff's complaint alleged facts which, if true, would satisfy each of the elements of an action for breach of fiduciary duty against the defendant, we find that the trial court erred in dismissing the complaint for failure to state a cause of action.

However, our analysis of the issues in this appeal cannot end here. We have been presented with questions as to the nature and extent of the damages for which the plaintiff may seek recovery in her breach of fiduciary duty claim, issues that will most certainly arise again on remand.

In addition to seeking recovery for the fees that she actually paid, the plaintiff also sought damages for an additional $2,500, reflecting the judgment that the defendant obtained against her for attorney fees in excess of his retainer. According to the complaint, the defendant assured the plaintiff at the time of his engagement that any legal fees in excess of his initial retainer would be borne by her husband. Nonetheless, the defendant subsequently obtained a judgment against the plaintiff for an additional $2,500 in fees.

■ Transactions between an attorney and a client are closely scrutinized, and when the attorney derives a benefit from such a transaction, it is presumed to be the result of undue influence. See *In re Marriage of Pagano*, 154 Ill. 2d 174, 185, 607 N.E.2d 1242 (1992); *Klaskin v. Klepak*, 126 Ill. 2d 376, 386, 534 N.E.2d 971 (1989). In particular, the supreme court has held that undue influence is presumed to apply to any transaction in which an attorney purports to alter his prior fee arrangement with a client. *Pagano*, 154 Ill. 2d at 185. The presumption is especially appropriate in dissolution cases "where the attorney often has intimate knowledge of his client's financial and emotional condition[,] so as to be able to gauge exactly how big a fee the client is likely *** to accept before being willing to hazard the extra costs, delays and uncertainties of switching counsel." *Pagano*, 154 Ill. 2d at 185.

■ In this case, while the complaint alleged that the defendant altered the original fee agreement and obtained a judgment against the plaintiff for legal fees in excess of the $7,500 retainer, he released that judgment without the plaintiff having paid him any additional money. Consequently, the plaintiff suffered no monetary loss as a result of the judgment and, therefore, cannot include the $2,500 sum as an element of damage.

■ The most difficult issue presented by this appeal is that of whether emotional distress is a proper element of damage in an action for breach of fiduciary duty against an attorney. To be sure, the facts alleged in the plaintiff's complaint paint a most egregious set of circumstances. Nevertheless, the issue as framed is purely a legal one, the resolution of which requires an examination of the very nature of the attorney-client relationship, the extent of the fiduciary duties arising therefrom, and the nature of an action for breach of fiduciary duty against an attorney.

Our research reveals only three appellate cases in Illinois that address the question of whether emotional distress damages are recoverable against an attorney in a legal malpractice action. See *Suppressed v. Suppressed*, 206 Ill. App. 3d 918, 565 N.E.2d 101 (1990); *Horn v. Croegnert*, 187 Ill. App. 3d 53, 542 N.E.2d 1124 (1989); *Maere v. Churchill*, 116 Ill. App. 3d 939, 452 N.E.2d 694 (1983). We will dispense with any attempt to analyze the *Horn* opinion, as the court in that case did not favor us with any reasoning or citation to authority in support of its conclusion that damages for emotional distress are recoverable in a legal malpractice action. See *Horn*, 187 Ill. App. 3d at 56-57. Additionally, it appears that the plaintiff in *Horn* sought only economic damages by reason of her attorney's alleged malpractice; it was the court on review that ventured its opinion that she might also be entitled to noneconomic damages by reason of her "[l]oss of self-esteem, shame, public ridicule and moral anguish" (see *Horn*, 187 Ill. App. 3d at 56), thus rendering the court's pronouncement on the matter *obiter dictum*. See *Larson v. Johnson*, 1 Ill. App. 2d 36, 40, 116 N.E.2d 187 (1953).

In *Maere*, 116 Ill. App. 3d 939, 425 N.E.2d 694, the plaintiffs sought recovery against their attorneys for damages allegedly sustained when the attorneys failed to properly examine the title of a parcel of property the plaintiffs had contracted to purchase. The complaint in *Maere* asserted claims based upon breach of contract and negligence, and sought damages in both counts for emotional distress as well as pecuniary loss. The trial court struck the plaintiffs' damage claims for emotional distress under both theories. In affirming the trial court on this issue, the third district of this court analyzed the circumstances under which damages for emotional distress can be recovered in actions for breach of contract and negligence. As to the propriety of the trial court's order striking the plaintiffs' prayer for emotional distress damages in their breach of contract count, the *Maere* court held that "damages for breach [of contract] will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm, or where the defendant had reason to know, when the contract was made, that its breach would cause mental suffering for reasons other than mere pecuniary loss." *Maere*, 116 Ill. App. 3d at 944. As to the negligence count, the court found that this state's long-standing rule barring recovery for emotional distress under a negligence theory in the absence of an accompanying physical impact, even as modified by the "zone-of-physical-danger rule" adopted in *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 457 N.E.2d 1 (1983), "is not broad enough *** to permit recovery *** where the emotional distress

is premised solely upon alleged negligence \*\*\* in performing legal work." *Maere*, 116 Ill. App. 3d at 945.

The court in *Suppressed* was called upon to review the dismissal of a complaint for breach of fiduciary duty against an attorney based upon allegations strikingly similar to those in the instant action. Specifically, the plaintiff in *Suppressed* alleged that her attorney breached his fiduciary duty when he "psychologically coerced or seduced her into having sexual relations with him at the same time that he was to be representing her in a divorce action." *Suppressed*, 206 Ill. App. 3d at 920. In that case, the court held that the fiduciary duty owed by an attorney should not extend to an attorney's personal relationships with his clients, "unless there is tangible evidence that the attorney actually made his professional services contingent upon the sexual involvement or that his legal representation of the client was, in fact, adversely affected." *Suppressed*, 206 Ill. App. 3d at 925. The court went on to opine that, even if it were to assume that it was a breach of fiduciary duty for an attorney to engage in sexual relations with a client, dismissal of the complaint was still appropriate as the plaintiff had failed to allege any actual damages stemming from a loss suffered in her underlying dissolution action or that her legal position was compromised by the breach alleged. *Suppressed*, 206 Ill. App. 3d at 925-26. Relying primarily upon the traditional argument of "potential for abuse," the court went on to hold that mental distress, "absent any quantifiable injury stemming from an attorney's legal representation of his client," is insufficient to support an action for breach of fiduciary duty against an attorney. *Suppressed*, 206 Ill. App. 3d at 925-26.

The plaintiff urges this court to decline to follow the "*quid pro quo*" and "adverse effects" limitations on an attorney's liability for breach of fiduciary duty by reason of having taken sexual advantage of a client as articulated in *Suppressed*. According to the plaintiff, the holding in *Suppressed* is contrary to the principles set forth by the supreme court in *Corgan v. Muehling*, 143 Ill. 2d 296, 574 N.E.2d 602 (1991), and is grounded in a policy justification specifically rejected in *Corgan*. As an alternative, the plaintiff argues that, even if we were to follow *Suppressed*, her complaint satisfied both the *quid pro quo* and adverse effects limitations, and also alleged actual damages stemming from the defendant's breach of fiduciary duty.

In *Corgan*, the supreme court held that the zone-of-physical-danger rule adopted in *Rickey*, 98 Ill. 2d 546, 457 N.E.2d 1, was inapplicable to patients who directly suffer emotional distress due to a psychotherapist's negligence in engaging in sexual relations with them. *Corgan*, 143 Ill. 2d at 308. The court also rejected the require-

ment that there be a manifestation of physical symptoms in order to allow recovery for emotional distress damages. In so doing, the court implicitly rejected the "potential for abuse" as a valid justification for the disallowance of damages for the negligent infliction of emotional distress absent physical symptoms. *Corgan*, 143 Ill. 2d at 309-10.

Unlike the court in *Corgan*, we are not called upon to determine whether the plaintiff might be entitled to recover emotional distress damages from the defendant under a negligence theory. That inquiry has been foreclosed by reason of the waiver principles discussed earlier. Rather, our task is to decide whether such damages are compensable in the context of a breach of fiduciary duty claim against an attorney.

We do not believe that the holding in *Corgan* should be heralded as the demise of all distinction between actions that are essentially contract based and those that sound in tort merely because an aggrieved party claims damages for emotional distress. We do not read *Corgan* so broadly as to support the notion that, by breaching a contract, even under circumstances evincing culpable negligence, one necessarily becomes liable in tort merely because the nonbreaching party suffers some emotional distress as a consequence of the breach. Although admitting that the line between breach of contract and tort is in some cases blurred at best, we are not prepared to concede that the distinction has ceased to exist. To be sure, breach of contract under some circumstances is cognizable in tort; however, the metamorphosis is not necessarily the result of the type of injury suffered as much as it is a function of the foreseeability, at the time of contracting or breach, of the type of harm that tort law was designed to remedy. Reasoning from the injury to the classification of an action, and thus determining the range of compensable damage, is exactly the reverse logic that has led to the controversy and criticism surrounding the economic loss doctrine. Consequently, we believe that courts must look not only to the type of injury suffered in determining whether contract or tort principles will govern an action, but must also look to (1) the relationship of the parties, (2) the subject matter of the contract, if any, from which that relationship sprung, and (3) the foreseeability of harm reasonably contemplated both at the time the relationship came into existence and at the time of the injury-causing conduct. See *Collins v. Reynard*, 154 Ill. 2d 48, 607 N.E.2d 1185 (1992).

A close examination of the opinion in *Corgan* reveals that the court did not reason from the injury, mental distress, to its conclusion that the plaintiff was a direct victim of negligence and, as a con-

sequence, entitled to recover damages for mental distress. Rather, the court analyzed the question of whether the actions of the defendant-therapist were in breach of a cognizable duty owed to his patient resulting in the harm claimed. After determining that the nature of the therapist-patient relationship gives rise to a duty on the part of the therapist to refrain from activity which carries a foreseeable, and unreasonable, risk of causing emotional harm to a patient, the court found that sexual relations with a patient constitute a breach of that duty rendering the therapist liable in tort for the proximately resulting emotional distress suffered by the patient. *Corgan*, 143 Ill. 2d at 306-08.

In *Collins*, 154 Ill. 2d 48, 607 N.E.2d 1185, the supreme court held that "a complaint against a lawyer for professional malpractice may be couched in either contract or tort." 154 Ill. 2d at 50. Included within the rubric of legal malpractice are claims grounded in breach of contract, negligence, and breach of fiduciary duty. See *Metrick*, 266 Ill. App. 3d 649, 639 N.E.2d 198. Although the decision in *Collins* eliminated the distinctions separating contract actions and tort actions as they relate to the limits imposed on the recovery of economic losses in legal malpractice actions, it did not change the circumstances under which a lawyer may be sued for malpractice, nor did it change the damages recoverable. *Collins*, 154 Ill. 2d at 52.

■ Breach of fiduciary duty is controlled by the substantive laws of agency, contract, and equity. *Kinzer v. City of Chicago*, 128 Ill. 2d 437, 445, 539 N.E.2d 1216 (1989); *La Salle National Trust, N.A. v. Board of Directors of the 1100 Lake Shore Drive Condominium*, 287 Ill. App. 3d 449, 455 (1997). We can conceive of no principled reason to declare breach of fiduciary duty to be a tort merely because the breaching party is an attorney.

Much has been written of late on the subject of the sexual involvement of attorneys with their clients. There is no doubt any longer that such behavior can result in professional discipline in Illinois. See *In re Rinella*, 175 Ill. 2d 504, 677 N.E.2d 909 (1997). However, the mere fact that an attorney may have violated professional ethics does not, of itself, give rise to a cause of action for damages. *Nagy v. Beckley*, 218 Ill. App. 3d 875, 578 N.E.2d 1134 (1991). We find that no useful purpose would be served by cataloging the cases from other jurisdictions that have addressed the question of whether, and under what circumstances, an attorney can be held liable by reason of having engaged in a sexual relationship with a client, a task recently undertaken by the Rhode Island Supreme Court in *Vallinoto v. DiSandro*, No. 93—379 (R.I. February 11, 1997). It is sufficient to comment that the resolution of the issue throughout the country has not been at all consistent.

We begin our analysis with certain very basic principles: (1) breach of fiduciary duty is not a tort but, rather, is governed by the substantive law of contracts (*Kinzer*, 128 Ill. 2d at 445); (2) sexual intercourse between two consenting adults is not, of itself, actionable conduct (see *Hertel v. Sullivan*, 261 Ill. App. 3d 156, 160, 633 N.E.2d 36 (1994)); and (3) the nature of the attorney-client relationship does not give rise to a duty on the part of the attorney to improve a client's mental or emotional well-being (*Suppressed*, 206 Ill. App. 3d at 923-24). Our agreement with the holding in *Suppressed*, that the essential purpose of an attorney-client relationship is the provision of competent legal services rather than the improvement of the client's emotional well-being, should not, however, be taken as our concurrence with that decision's narrow view of the fiduciary duty imposed upon an attorney by reason of that relationship.

The court in *Suppressed* did "not believe that the higher standard of care required of a fiduciary should extend to an attorney's personal relationships with his clients, unless there is tangible evidence that the attorney actually made his professional services contingent upon the sexual involvement or that his legal representation of the client was, in fact, adversely affected." *Suppressed*, 206 Ill. App. 3d at 925.

While we certainly agree with the notion that an attorney's sexual relationship with a client constitutes a breach of fiduciary duty when the attorney makes his legal representation contingent upon sexual involvement or when the client's legal interests are compromised as a result, we cannot agree that all other sexual involvement with a client is either purely "personal" or outside of the scope of an attorney's fiduciary obligations. If an attorney obtains information in the course of representing a client which suggests that the client might be unusually vulnerable to a suggestion of sexual involvement and the attorney uses that information to seduce the client, we would find a breach of fiduciary duty without regard to whether the client was charged a usual monetary fee or the client's legal interests suffered as a result. An attorney simply cannot use information obtained in the representation of a client to entice her into a sexual relationship that she otherwise would not have engaged in and then claim that the relationship is purely personal or that he has not breached his fiduciary duty. That is not to say that the client would in all cases be entitled to a recovery; she would still be required to show some compensable damage. However, on the issue of the type of damages necessary to support an action for breach of fiduciary duty against an attorney, we also find ourselves in disagreement with the holding in *Suppressed*.

As stated earlier, the court in *Suppressed* held that mental distress, "absent any quantifiable injury stemming from an attorney's legal representation of his client," is insufficient to support an action for breach of fiduciary duty against an attorney. *Suppressed*, 206 Ill. App. 3d at 925-26. We disagree.

■ In determining the range of compensable damages under the law of contracts, Illinois follows the rule in *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854), that recoverable damages are those that naturally result from the breach or are the consequence of special or unusual circumstances that are in the reasonable contemplation of the parties when making the contract. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 515 N.E.2d 61 (1987). Recovery for mental distress is "excluded unless *** the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." Restatement (Second) of Contracts § 353, at 149 (1981); see also *Maere*, 116 Ill. App. 3d at 943-44.

■ Unlike the therapist-patient relationship, there is nothing in the nature of the attorney-client relationship which, of itself, would allow us to conclude that an attorney is on notice that a breach of fiduciary duty would likely result in serious emotional distress to his client. Of course, certain types of engagements, such as actions for dissolution of marriage, adoption, and the termination of parental rights, inherently give rise to emotional issues. See *Pagano*, 154 Ill. 2d at 185; *Petrowsky v. Family Service of Decatur, Inc.*, 165 Ill. App. 3d 32, 518 N.E.2d 664 (1987). However, the mere fact that the subject matter of the contract encompasses sensitive issues does not mean that a breach of the contract will necessarily result in severe emotional distress. It is only when the attorney has reason to know that a breach of his fiduciary duty is likely to cause emotional distress, for reasons other than pecuniary loss, that damages will be given as compensation for mental suffering. *Maere*, 116 Ill. App. 3d at 944; see also *Petrowsky*, 165 Ill. App. 3d at 38-39.

In this case, the plaintiff alleged, *inter alia*, that: she engaged the defendant to represent her in an emotionally trying divorce; the defendant knew she was experiencing feelings of anxiety and insecurity; she became dependent upon the defendant; and she experienced emotional distress as a consequence of having engaged in a sexual relationship with the defendant. We believe the plaintiff has pled sufficient facts to support the conclusion that the defendant used his position as the plaintiff's attorney and his knowledge of her dependence upon him to gain sexual favors, thus breaching his fiduciary duty. Additionally, the plaintiff's complaint also contains facts from which

it can be inferred that, at the time the defendant engaged in sexual relations with the plaintiff, he should have known of her dependence upon him and the emotional distress that could result from such behavior. In sum, we find that the plaintiff has pled sufficient facts to enable her to pursue damages for mental distress in her breach of fiduciary duty claim.

We do not mean to suggest by our opinion in this case that all sexual involvement with a client rises to the level of breach of fiduciary duty on the part of an attorney. If an attorney and a client are personally attracted to each other and that attraction is not the product of any undue influence or abuse of confidential information on the part of the attorney, then any resulting sexual involvement between such individuals is a purely personal matter between two consenting adults.

We address the plaintiff's final argument on appeal together with the defendant's cross-appeal, because both concern the denial of the parties' respective petitions for sanctions under Supreme Court Rule 137. 134 Ill. 2d R. 137. The defendant brought the initial petition for sanctions against the plaintiff based upon her complaint. The plaintiff responded with her own petition for sanctions, charging that the defendant's sanctions petition was vexatious and imposed solely to harass and intimidate her.

At the hearing on the defendant's petition, three witnesses testified. Prior to the conclusion of the defendant's evidence, the trial court summarily ruled for the plaintiff. The defendant now argues that this summary disposition was premature and that further testimony would have established conclusively that the plaintiff fabricated her claims against him.

The purpose of Rule 137 sanctions is to prevent the abuse of the judicial process by punishing a party who brings vexatious or harassing litigation based upon unfounded statements of fact or law; it is not intended merely to penalize claimants for lack of success. *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074, 651 N.E.2d 601 (1995). The determination of whether or not to impose sanctions lies within the trial court's discretion, the exercise of which will not be disturbed absent abuse. See *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 467, 551 N.E.2d 1319 (1990). Whether a full hearing is required on a sanctions petition depends upon the facts of each case. If it becomes apparent from the material on file that a full hearing is unwarranted and that there is sufficient information to decide the petition, the trial court may, in its discretion, decide it on a summary basis. *Olsen v. Staniak*, 260 Ill. App. 3d 856, 862, 632 N.E.2d 168 (1994).

■ The defendant presented the testimony of two of his former employees and the plaintiff as an adverse witness. With this testimony, the defendant essentially endeavored to discredit the plaintiff's allegations that she felt compelled to have sex with him and that she suffered emotional distress as a result of the unwanted relationship. The defendant argues that, if allowed to complete his proof on the motion for sanctions, he would have attempted to follow up on testimony by the plaintiff that she had seen a psychiatrist for a lengthy period of time while seeing the defendant and yet never complained to the psychiatrist about the relationship.

We find no abuse of discretion in the trial court's ruling on the defendant's petition. The court considered the recent findings of the hearing board of the Attorney Registration and Disciplinary Commission, that the defendant had in fact breached his fiduciary duty to the plaintiff by using his status to force her into a sexual relationship. Further, while the testimony of the defendant's employees did cast doubt upon the plaintiff's claim of emotional distress, it reflected only those witnesses' perceptions of the plaintiff's conduct. The testimony did not establish conclusively that her claim was vexatious or without any basis in fact; rather, it merely showed that a *bona fide* dispute existed over the allegations in the complaint.

■ Nor was there error in the denial of the plaintiff's sanctions petition. The plaintiff contended that the defendant's petition was in bad faith because it was directed against the plaintiff personally rather than against her counsel. However, the defendant's petition was based primarily upon the plaintiff's alleged misrepresentation of the facts essential to her complaint. We have reviewed the evidence presented in support of the defendant's petition and conclude that, in light of the fact that a *bona fide* dispute existed over the facts alleged in this case, the court did not abuse its discretion in failing to grant sanctions against the defendant.

For the foregoing reasons, we affirm the denial of the parties' respective motions for sanctions, reverse the dismissal of the third-amended complaint, and remand this case for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

CAHILL and O'BRIEN, JJ., concur.