**Maxcine ARCHULETA, Plaintiff and Petitioner,**

v.

**Donald C. HUGHES, Defendant and Respondent.**

No. 970166.

Supreme Court of Utah.

Oct. 2, 1998.

J. Kelly Walker, Richard K. Glauser, Salt Lake City, for petitioner on appeal.

Donald C. Hughes, pro se.

DURHAM, Associate Chief Justice:

This case comes before us on a writ of certiorari to the court of appeals. The petitioner, Maxcine Archuleta, argues that the court of appeals erred in upholding the trial court's denial of Archuleta's motions (a) to amend her complaint to conform to the evidence, (b) for summary judgment, (c) to com-

pel discovery, and (d) in affirming the trial court's refusal to give jury instructions on agency. We affirm.

Archuleta was injured in an automobile accident and was subsequently represented by Donald Hughes in an action for personal injuries. Hughes settled with the other driver's insurance company for $9,286, which included $2,400 for unpaid medical expenses allegedly related to injuries sustained in the accident. Hughes took one third of the settlement—including $800 representing one third of the $2,400—recovered for unpaid medical expenses. Archuleta claimed that, because those expenses could have been submitted under the Personal Injury Protection ("PIP") portion of her insurance policy, it was malpractice for Hughes to submit them to the tortfeasor's insurer and then to take a portion of them as fees. After Archuleta received the settlement proceeds, she dismissed Hughes as her attorney.

In 1994, Archuleta filed a complaint against Hughes alleging malpractice and negligence. On November 1, 1995, Archuleta moved for partial summary judgment including summary judgment on a breach of contract claim. That claim, however, was not in fact contained in her complaint. On November 29, 1995, Archuleta filed a motion to amend her complaint to add a cause of action for breach of contract. The trial court denied that motion.

Archuleta also filed a motion to compel discovery of Hughes' trust account statement, which the trial court denied. The trial court deemed the statement irrelevant to Archuleta's original claims.

At trial, Archuleta requested a jury instruction on the issue of agency, asking the judge to instruct the jury that Hughes was responsible for the acts and omissions of his representative, Ron Bennett.[1] The trial court denied that request on the grounds that it would have confused the jury and the acts or omissions of Bennett were not at issue in the case. The jury returned a verdict of nonsuit on the malpractice and negligence claims. Archuleta filed an appeal that we poured over to the court of appeals, and

the Utah Court of Appeals subsequently affirmed the trial court's decision. We granted Archuleta's Petition for Writ of Certiorari.

█ In reviewing the court of appeals' decision, we adopt the same standard of review used by that court: " '[Q]uestions of law are reviewed for correctness, and the trial court's factual findings are reversed only if clearly erroneous.' " *Hebertson v. Willowcreek Plaza*, 923 P.2d 1389, 1392 (Utah 1996) (quoting *State v. Harmon*, 910 P.2d 1196, 1199 (Utah 1995)). The decision to permit amendment to the pleadings is governed by rule 15 of the Utah Rules of Civil Procedure.

Our review of the trial court's application of rule 15(b) is a legal question that we review for "correctness." *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994). However, because the trial court's determination of whether the issues were tried with all the parties' "implied consent" is highly fact intensive, we grant the trial court a fairly broad measure of discretion in making that determination under a given set of facts. *See id.* at 939.

*Keller v. Southwood North Medical Pavilion, Inc.*, 959 P.2d 102, 105 (Utah 1998).

Archuleta has raised four questions for our review. First, she contends that the court of appeals erred in upholding the trial court's denial of her motion to amend the complaint and of her motion for partial summary judgment on the breach of contract issue. Second, she asserts that Hughes' fee on the portion of the settlement that could have been submitted to her PIP insurer was excessive and unreasonable and, therefore, Hughes violated the Utah Rules of Professional Conduct by taking it. This violation, she claims, constituted legal malpractice. Third, Archuleta contends that the court of appeals erred in concluding that the trial court did not abuse its discretion when it denied her motion to compel discovery of Hughes' trust account statements. Finally, Archuleta argues that the trial court's refusal to instruct the jury on the issue of agency was prejudicial.

---

1. Ron Bennett was Hughes' agent and worked on Archuleta's case for Hughes. Hughes stated at trial that his relationship to Bennett was analogous to that of an employer and employee.

## I. MOTION TO AMEND COMPLAINT

Archuleta asserts that the trial court erred in denying her motion to amend the complaint.[2] She argues that, although breach of contract was not originally pled, it was argued and tried impliedly through Hughes' discussion of the retainer agreement at trial and in the initial pleadings. "The purpose of an amendment to conform to proof is to bring the pleadings in line with the actual issues upon which the case was tried. There must, of course, be either express or implied consent of the parties for the trial of issues not raised in the pleadings." *General Ins. Co. of Amer. v. Carnicero Dynasty Corp.*, 545 P.2d 502, 506 (Utah 1976). "[E]xpress or implied consent of the parties must be evident from the record." *Colman v. Colman*, 743 P.2d 782, 785 (Utah Ct.App.1987) (citing *Wirtz v. F.M. Sloan, Inc.*, 285 F.Supp. 669, 675 (W.D.Pa.1968)). Archuleta suggests that Hughes raised the claim for breach of contract in the following excerpt from his Reply Memorandum in Support of Motion to Dismiss Fraud Cause of Action:

> The Plaintiff fails to state a claim for fraud.... At best Archuleta makes out a claim that the parties interpret the written contract differently.

This language simply does not satisfy the requirements of rule 15(b). The rule requires the issues to be tried by express or implied consent of the parties. Hughes' motion argued that Archuleta failed to state a claim for fraud. Hughes did not expressly or impliedly consent to try the contract issue by merely mentioning the contract in his reply memorandum.

Archuleta argues that Hughes had an opportunity to oppose the breach of contract claim in his memorandum in opposition to her motion for partial summary judgment. Archuleta claims that she introduced evidence on the breach of contract claim in her motion for partial summary judgment, and asserts that Hughes' failure to object in his reply memorandum implied his consent to

consideration of the issue. However, the record reveals that no evidence was actually introduced to which Hughes could have objected. "Implied consent ... may be found 'where one party raises an issue material to the other party's case or where evidence is introduced without objection' where it 'appear[s] that the parties understood the evidence [was] to be aimed at the unpleaded issue.'" *Colman*, 743 P.2d at 785 (citation omitted). Since Archuleta failed to introduce evidence with respect to the contract issue, Hughes' failure to object in his memorandum in opposition to the motion for partial summary judgment does not meet the requirements of rule 15(b).

Archuleta further argues that Hughes raised the issue of the retainer agreement and the duties imposed by it at trial. While cross examining an expert witness Hughes asked:

> Q. The relationship between the attorney and the client is a contractual relationship; isn't it?
>
> A. More than that, it's also a fiduciary relationship ...
>
> Q. The scope of the duty is contractual? ...
>
> A. Okay.
>
> Q. The judge is going to tell the Jury that the scope of the duty is to find between the two parties a contract.
>
> A. Yes.

Archuleta claims that Hughes again discussed the retainer agreement in response to questions by Archuleta's attorney:

> Q. Have you alleged in this case that you had—that you were entitled, under the plain language of the retainer agreement, to receive one-third of any recovery, including any payment made through PIP?
>
> A. I believe that I was entitled to that. Yes.

---

2. Amendment of pleadings is specifically addressed in rule 15(b), which states:

   When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

   Utah R. Civ. P. 15(b).

Q. I'm just asking if you took that position and made that claim, and you tell me you have.

A. I think a retainer agreement on its plain face gives me the right to recover one-third of what is paid.

Q. Is that a contractual right you're talking about?

A. Yeah. Attorney fees are contractual— I mean attorney retainer agreements are contracts.

Q. So you're claiming you had a right to do that under the terms of the contract?

A. Right. It says plainly on its face that on either liability, the person that ran into her, their insurance, I get to claim a third of what we recover. That— that's what she agreed to. And I would also submit that that's the standard that's done here in this community.

Finally, Archuleta contends that Hughes again described the contract in this context:

Q. Now, is this the document you claim your contractual right to (inaudible)?

A. This is the Attorney Retainer Agreement. That's where she was paying for me to be her attorney and we set out how we were going—how I was going to get paid and what I'm going to do.

■ The record shows that Hughes did not express or imply consent with respect to the breach of contract issue. " 'A trial court may not base its decision on an issue that was tried inadvertently.'" *Colman*, 743 P.2d at 785 (quoting *MBI Motor Co. v. Lotus/East, Inc.*, 506 F.2d 709, 711 (6th Cir. 1974)). Although Hughes mentioned the retainer agreement on several occasions, the references were not in the context of breach of contract; Hughes mentioned the contract in defense against Archuleta's fraud charge. To meet the requirements of rule 15(b), there must be consent. The mere mention of the

contract's existence in the present case does not satisfy the requirements of rule 15(b).

■ Moreover, a finding of implied consent, " 'depends on whether the parties recognized that an issue not presented by the pleadings entered the case at trial.'" *Domar Ocean Transp. v. Independent Refining Co.*, 783 F.2d 1185, 1188 (5th Cir.1986) (quoting *Jimenez v. Tuna Vessel GRANADA*, 652 F.2d 415 (5th Cir.1981)). Nothing from the record indicates that Hughes consented or recognized the breach of contract issue when he mentioned the retainer agreement. We, therefore, conclude that the trial court's refusal to allow plaintiff to amend her complaint was not an abuse of discretion. Accordingly, we affirm the court of appeals.

## II. LEGAL MALPRACTICE

■ Archuleta contends that Hughes should not have charged a fee on a portion of her medical bills that could have been submitted to PIP. She asserts that Hughes committed malpractice and fraud by collecting a percentage of that amount properly part of a PIP settlement, arguing the fee was excessive and unreasonable in violation of the Utah Rules of Professional Conduct. Archuleta thus premised her constructive fraud and malpractice claims on a violation of the Utah Rules of Professional Conduct.

Before today, this court has not resolved the underlying question of whether a violation of the Utah Rules of Professional Conduct establishes a cause of action. Archuleta asserts that Hughes collected an unreasonable fee in violation of rule 1.5. *See* Utah Rules of Professional Conduct Rule 1.5. She further argues that the fee was unreasonable and its collection unethical according to Utah State Bar Ethics Advisory Opinion No. 114.[3] Archuleta claims that because Hughes' fee was unreasonable and his actions unethical, Hughes is liable for negligence, fraud and malpractice.

However, the Rules of Professional Conduct provide that a "[v]iolation of a rule

---

**3.** The advisory opinion explains: "[I]t would be unethical, in virtually all cases, for a lawyer to charge a contingent fee for collecting a claim against his client's own insurer under the PIP

coverage when the attorney has been engaged on a contingent fee basis to handle a personal injury claim against a third party...." Utah State Bar Ethics Advisory Opinion No. 114–15.

should not give rise to a cause of action, nor should it create any legal presumption that a legal duty has been breached." Utah Rules of Professional Conduct, Scope. The Utah Court of Appeals has held that, "[i]n describing legal malpractice based on breach of fiduciary duty as nonadherence to ordinary standards of professional conduct, we do not mean that violations of the Rules of Professional Conduct give rise to a cause of action for legal malpractice." *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1291 n. 3 (Ct.App.) *cert. denied*, 919 P.2d 1208 (Utah 1996).

■ We agree with the court of appeals, and conclude that the Utah Rules of Professional Conduct are not designed to create a basis for civil liability. Other jurisdictions addressing this issue agree. *See Orsini v. Larry Moyer Trucking, Inc.*, 310 Ark. 179, 833 S.W.2d 366, 369 (Ark.), *reh'g denied*, 310 Ark. 179, 839 S.W.2d 180 (Ark.1992); *Vallinoto v. DiSandro*, 688 A.2d 830, 837 (R.I. 1997); *see generally Stanley v. Richmond*, 35 Cal.App.4th 1070, 41 Cal.Rptr.2d 768 (Cal.Ct. App.1995); *Griva v. Davison*, 637 A.2d 830 (D.C.App.1994); *Doe v. Roe*, 289 Ill.App.3d 116, 224 Ill.Dec. 325, 681 N.E.2d 640 (Ill.App. Ct.), *appeal denied*, 174 Ill.2d 558, 227 Ill. Dec. 4, 686 N.E.2d 1160 (Ill.1997); *Sommers v. McKinney*, 287 N.J.Super. 1, 670 A.2d 99 (N.J.Super.Ct.App.Div.1996); *Weintraub v. Phillips, Nizer, Benjamin, Krim & Ballon*, 172 A.D.2d 254, 568 N.Y.S.2d 84 (N.Y.App. Div.1991); *Webster v. Powell*, 98 N.C.App. 432, 391 S.E.2d 204 (N.C.Ct.App.1990); *Tanasse v. Snow*, 929 P.2d 351 (Utah Ct.App. 1996), *cert. granted*, 937 P.2d 136 (Utah 1997); *Harrington v. Pailthorp*, 67 Wash. App. 901, 841 P.2d 1258, 1259 (Wash.Ct.App. 1992), *review denied*, 121 Wash.2d 1018, 854 P.2d 41 (Wash.1993). The legal standards applicable to malpractice claims are entirely adequate to protect clients as plaintiffs, and Archuleta's claims here were tried to and rejected by the jury.

■ We do note, however, that the conduct of Hughes in this case may have been unethical.[4] PIP benefits are often a source of confusion, especially when an attorney is attempting to settle medical bills that are the result of different accidents. To avoid cumbersome litigation and confusion over these issues, we observe that a retainer agreement should specifically state and explicitly disclose that an insured can submit PIP claims directly to his insurance company without a lawyer's assistance. It should also disclose that the attorney will take a fee from all recoveries including items that could have been submitted under an insured's PIP coverage but were not. This practice gives the insured client an option to either submit his own bills to his PIP or allow the attorney to take care of all of the bills, with the knowledge that the attorney will take a fee calculated on recoveries including PIP payments.

## III. MOTION TO COMPEL AND JURY INSTRUCTION QUESTIONS

■ The court of appeals observed in its opinion that Archuleta "failed to establish how [Hughes'] financial records were relevant in any way to her stated claims." *Archuleta v. Hughes*, No. 960276, slip op. at 2 (Utah Ct.App. March 6, 1997). We agree and affirm its conclusion that the trial court's denial of her motion to compel was not an abuse of discretion. We also agree with the appellate court's analysis of the jury instruction question; such an instruction "would have added nothing to the case," *id.* at 3, and the trial court properly refused to give it. Affirmed.

STEWART, ZIMMERMAN and RUSSON, JJ., concur in Associate Chief Justice DURHAM's opinion.

HOWE, C.J., dissents.

HOWE, Chief Justice, dissenting:

I respectfully dissent. The court of appeals erred in holding that the trial court did not abuse its discretion in denying Archuleta's motion, made at the conclusion of the trial, to amend her complaint to conform to

---

4. Moreover, we note that Hughes' practice of using a third party to settle an insurance claim has subsequently been held unlawful. *See Utah State Bar v. Summerhayes & Hayden*, 905 P.2d 867 (Utah 1995) (holding practice of third-party adjusting of insurance claims by public adjusters is the "unauthorized practice of law").

the evidence which had been presented. That motion was made pursuant to rule 15(b) of the Utah Rules of Civil Procedure, which states:

> (b) Amendments to conform to the evidence. When issues not raised by the pleading are tried by express or implied consent of the parties, they *shall* be treated in all respects as if they had been raised in the pleadings. Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

(Emphasis added.) Although Archuleta had not pleaded breach of contract in her complaint, but instead had pleaded negligence, fraud, and malpractice, Hughes defended on the ground that he had strictly complied with the retainer agreement between the parties. In response to questions asked him by Archuleta's attorney, Hughes testified as follows:

> Q. Have you alleged in this case that you had—that you were entitled, under the plain language of the retainer agreement, to receive one-third of any recovery, including any payment made through PIP?
>
> A. I believe that I was entitled to that. Yes.
>
> Q. I'm just asking if you took that position and made that claim, and you tell me you have.
>
> A. I think a retainer agreement on its plain face gives me the right to recover one-third of what is paid.
>
> Q. Is that a contractual right you're talking about?
>
> A. Yeah. Attorney fees are contractual— I mean attorney retainer agreements are contracts.
>
> Q. So you're claiming you had a right to do that under the terms of the contract?
>
> A. Right. It says plainly on its face that on either liability, the person that ran into her, their insurance, I get to claim a third of what we recover. That—that's what she agreed to. And I would also submit

that that's the standard that's done here in this community.

Subsequently, Hughes reiterated his right to the fee he collected under the terms of the retainer agreement:

> Q. Now, is this the document you claim your contractual right to (inaudible)?
>
> A. This is the Attorney Retainer Agreement. That's where she was paying for me to be her attorney and we set out how we were going—how I was going to get paid and what I'm going to do.

In *General Insurance Co. v. Carnicero Dynasty Corp.*, 545 P.2d 502, 506 (Utah 1976), we held:

> Implied consent may be found where one party raises an issue material to the other party's case, or where evidence is introduced without objection. Significantly, the first part of Rule 15(b) is not permissive in terms, for it provides that issues tried by express or implied consent *shall* be treated as if raised in the pleadings. Even failure to amend does not affect the result of the trial of these issues.

(Footnotes omitted.) It is clear that the issue of whether Hughes had breached the retainer agreement was litigated at the trial. Hughes responded to Archuleta's allegations of negligence, malpractice, and fraud, by essentially stating that everything about his representation of Archuleta—including the fee he retained from her insurance settlement—was done pursuant to the terms of the retainer agreement. The majority opinion states that "[a]lthough Hughes mentioned the retainer agreement on several occasions, the references were not in the context of breach. of contract; Hughes mentioned the contract in defense against Archuleta's fraud charge." That distinction is not determinative. Hughes' defense to the fraud charge was that he had strictly adhered to the terms of the retainer agreement. Thus the breach of contract issue was necessarily tried. Therefore, the trial court erred in not allowing Archuleta to amend her complaint to conform with Hughes' abundant testimony on the breach of contract issue.