# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Flores v. Santiago*, 2013 IL App (1st) 122454

---

| | |
|---|---|
| Appellate Court Caption | JENNIFER FLORES, Plaintiff-Appellant, v. MANUEL SANTIAGO, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-2454 |
| Filed | March 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court reversed the dismissal of plaintiff's complaint against an eye doctor alleging battery and a violation of the Illinois Gender Violence Act based on the sexual relations defendant had with plaintiff while treating her eye ailment, notwithstanding defendant's contention that the relations were consensual, since plaintiff alleged defendant provided her with illegal drugs on various occasions when sexual contact occurred and she could possibly prove she was intoxicated and could not have consented. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No.12-L-657; the Hon. Jeffery Lawrence, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Deutschman & Associates, P.C., of Chicago (Jeffrey S. Deutschman, of counsel), for appellant. |
| --- | --- |
| | Godzecki, Del Guidice, Americus & Farkas, LLP, of Chicago (Richard A. Del Guidice and Steven H. Leech, of counsel), for appellee. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Cunningham concurred in the judgment and opinion. |

## OPINION

¶ 1    The Hippocratic Oath, taken by physicians since time immemorial, states that medical providers must abstain from sexual relations with their patients. Plaintiff, Jennifer Flores, visited defendant, Dr. Manuel Santiago, for treatment regarding an eye ailment. According to her, the visits entailed more than eye treatment because Dr. Santiago doped her with narcotics and then engaged in sexual acts with her. We hold that her amended complaint stated a valid cause of action and therefore reverse and remand the case for further proceedings.

¶ 2    On January 19, 2012, plaintiff sued the defendant and alleged that he violated section 10 of the Illinois Gender Violence Act (Act) (740 ILCS 82/10 (West 2010)) and committed battery upon her. On March 7, 2012, defendant filed a motion to dismiss under section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)), arguing that plaintiff failed to allege sufficient facts to show that defendant's alleged sexual contact with the plaintiff was without the plaintiff's consent. Defendant also argued that the alleged sexual contact was not of the type that the Act was intended to address. On April 30, 2012, the circuit court granted the motion to dismiss, but granted plaintiff leave to replead.

¶ 3    On May 25, 2012, plaintiff filed the amended complaint that is the subject of this appeal. Plaintiff repleaded counts alleging a violation of the Act and common law battery. Both counts contain common allegations of fact, which we take as true for the purpose of this appeal. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).

¶ 4    The amended complaint alleges that defendant is a licensed physician doing business as the "Oak Park Eye Center" in Oak Park, Illinois. In approximately June 2011, plaintiff became a patient of defendant for treatment regarding her eyes. During June 2011 and thereafter, defendant would flirt, tease and play with the plaintiff during numerous checkups and regular evaluations. While plaintiff was a patient of defendant, they had sexual intercourse and oral sexual contact on a number of occasions. The sexual activity was not part of any standard medical examination, diagnosis or treatment for plaintiff's health problems.

¶ 5     The amended complaint also alleges that this sexual relationship constituted a misuse of defendant's authority, and that the doctor-patient relationship rendered plaintiff unable to consent to any sexual contact with the defendant. Medical literature allegedly indicates that many patients have feelings of dependency and transference toward their physicians that may continue long after the professional relationship ends. Defendant allegedly engaged in unethical conduct by exploiting the trust, knowledge, emotions or influence derived from the parties' professional relationship.

¶ 6     The amended complaint further alleges that on almost every occasion when sexual contact occurred, defendant provided plaintiff with illegal drugs, including marijuana, hashish and cocaine. On at least one occasion, defendant allegedly provided plaintiff with a full bottle of liquid cocaine hydrochloride. Defendant allegedly knew of plaintiff's weakness and susceptibility to drug use, which allowed him to take unfair advantage of her. Plaintiff allegedly developed or relapsed into a dependency and became psychologically controlled by the defendant. Plaintiff asserted that she was unable to consent to any sexual contact with the defendant as a result of being plied with illegal drugs.

¶ 7     The amended complaint asserts that the facts establish causes of action for a violation of section 10 of the Act and for common law battery.

¶ 8     On June 21, 2012, defendant filed a motion to dismiss the amended complaint under section 2-615 of the Code. Defendant also submitted a memorandum of law arguing that: (1) the plaintiff failed to allege sufficient facts to show that the alleged sexual contact was without the plaintiff's consent; and (2) the alleged sexual contact was not of the type that the Act was intended to address. On August 21, 2012, after briefing, the circuit court entered an order granting defendant's motion to dismiss. Plaintiff filed a timely notice of appeal to this court on August 22, 2012.

¶ 9                                    ANALYSIS

¶ 10    On appeal, plaintiff argues that the circuit court erred in dismissing her amended complaint pursuant to section 2-615 of the Code. "A section 2-615 motion to dismiss [citation] challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall*, 222 Ill. 2d at 429. "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts," and we "construe the allegations in the complaint in the light most favorable to the plaintiff." *Id*. Illinois is a fact-pleading jurisdiction, and a plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action. *Id*. at 429-30. However, "a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id*. at 429. We review an order granting or denying a section 2-615 motion *de novo*. *Id.*

¶ 11    Count I of the amended complaint claimed that the defendant violated section 10 of the Act, which provides as follows:

        "Any person who has been subjected to gender-related violence as defined in Section 5 may bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence. For purposes of this

Section, 'perpetrating' means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence." 740 ILCS 82/10 (West 2010).

¶ 12 Section 5 of the Act provides that:

"In this Act, 'gender-related violence', which is a form of sex discrimination, means the following:

(1) One or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in criminal charges, prosecution, or conviction.

(2) A physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois, whether or not the act or acts resulted in criminal charges, prosecution, or conviction.

(3) A threat of an act described in item (1) or (2) causing a realistic apprehension that the originator of the threat will commit the act." 740 ILCS 82/5 (West 2010).

¶ 13 A court's "primary objective in construing a statute is to ascertain and give effect to the intent of the legislature." *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 47. "The most reliable indicator of the legislature's intent is the plain language of the statute." *Id*. "When the statutory language is clear and unambiguous, it should be applied as written without resort to extrinsic aids or tools of interpretation." *Id*. In this case, the plain language of the Act clearly indicates that a plaintiff is required to prove an act or conditions "satisfying the elements of battery under the laws of Illinois" (or a threat thereof). 740 ILCS 82/5(2) (West 2010). Accordingly, plaintiff is required to allege such an act or conditions in this case to survive a dismissal of both her statutory claim under the Act in count I and her common law claim of battery in count II of her amended complaint.

¶ 14 Thus, we turn to consider the elements of battery under Illinois law. Generally, battery is committed by an individual if: " '(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.' " *Bakes v. St. Alexius Medical Center*, 2011 IL App (1st) 101646, ¶ 22 (quoting Restatement (Second) of Torts § 13 (1965)). Illinois courts have stated that battery may be defined as the wilful touching of the person of another or a successful attempt to commit violence on the person of another. *Bakes*, 2011 IL App (1st) 101646, ¶ 22 (and cases cited therein). We have also defined battery as involving defendant performing some affirmative act intended to cause an unpermitted contact. *Id*. " '[T]he gist of the action for battery is not the hostile intent of the defendant, but rather the absence of consent to the contact on the part of the plaintiff.' " *Country Mutual Insurance Co. v. Olsak*, 391 Ill. App. 3d 295, 306 (2009) (quoting *Cowan v. Insurance Co. of North America*, 22 Ill. App. 3d 883, 890 (1974)).

¶ 15 In this case, defendant's motion to dismiss primarily argued that plaintiff failed to allege specific facts establishing an absence of consent to the sexual contact. Plaintiff responds that she did plead specific facts regarding lack of consent, arguing that the doctor-patient relationship and the alleged supplying of illegal drugs both vitiate any consent to the sexual

contact. We consider plaintiff's second argument, as we find it dispositive.

¶ 16    Plaintiff argues that any consent was vitiated in this case because the defendant allegedly plied her with illegal drugs on almost every occasion of sexual contact. Defendant does not deny that severe intoxication may render a person unable to consent to sexual contact. See *People v. Vaughn*, 2011 IL App (1st) 092834, ¶ 37; see also *Doe v. Psi Upsilon International*, 2011 IL App (1st) 110306, ¶ 4 (in a case brought under the Act, the plaintiff was allegedly intoxicated when she awakened during an alleged sexual assault after a fraternity party); *People v. Fisher*, 281 Ill. App. 3d 395, 403 (1996) (declining to speculate as to what events, short of loss of consciousness through alcohol consumption, would be likewise sufficient to show inability to consent). Rather, defendant argues that in this case, plaintiff failed to make sufficient allegations that the drug usage rendered plaintiff unconscious, incapacitated or unaware of the sexual contact. Defendant also notes that plaintiff does not allege that she was under the influence of drugs on every occasion of sexual contact.

¶ 17    That defendant did not supply plaintiff with drugs on every occasion of sexual contact is not fatal to the complaint. Illinois law recognizes that episodes of nonconsensual sex may occur within a generally consensual relationship, even if they are difficult to prove. See *People v. M.D.*, 231 Ill. App. 3d 176, 192 (1992) (finding no rational basis for the marital exemption regarding acts of forcible sexual conduct). In this case, plaintiff specifically alleged that defendant provided plaintiff with illegal drugs, including marijuana, hashish and cocaine–a full bottle of liquid cocaine hydrochloride on at least one occasion. Plaintiff also specifically alleged that she was without the ability to consent to any sexual contact with defendant as a result of being plied with these illegal drugs. Based on these allegations, plaintiff may be able to prove a lack of consent based on severe intoxication. Accordingly, we conclude that the circuit court erred in dismissing the amended complaint pursuant to section 2-615 of the Code.

¶ 18    Given our conclusion on the issue of lack of consent based on intoxication, we need not address the other arguments plaintiff presented in this appeal. We note that Illinois has recognized the potential for harm caused by sexual activity between professionals and their clients. There is an evolving patchwork of regulatory authority on the issue. Lawyers, for instance, are prohibited from engaging in a sexual relationship with clients, unless a consensual relationship existed when the attorney-client relationship began. Ill. R. Prof. Conduct R. 1.8(j) (eff. Jan. 1, 2010). *Cf. Suppressed v. Suppressed*, 206 Ill. App. 3d 918 (1990) (illustrating difficulty of pleading cause of action for attorney-client sexual activity before adoption of rule); *Doe v. Roe*, 289 Ill. App. 3d 116, 130-31 (1997) (plaintiff sufficiently pled claim for breach of fiduciary duty arising from attorney-client sexual activity). Illinois also provides a statutory cause of action regarding sexual exploitation in psychotherapy. 740 ILCS 140/2 (West 2010). However, under that statute, " 'Psychotherapy' means the professional treatment, assessment, or counseling of a mental or emotional illness, symptom, or condition" and does not extend to other types of medical treatment. See 740 ILCS 140/1(e) (West 2010). The Department of Financial and Professional Regulation forbids psychologists from engaging in sexual relations with clients, and restricts such contact with an ex-client to at least 24 months after termination of treatment. See 68 Ill.

Adm. Code 1400.80(i) (2012). The Medical Practice Act of 1987 provides that the Department of Financial and Professional Regulation may take disciplinary or nondisciplinary action against licensees, including physicians, for "[i]mmoral conduct in the commission of any act including, but not limited to, commission of an act of sexual misconduct related to the licensee's practice." 225 ILCS 60/22(A)(20) (West 2010). Some Illinois physicians have been subject to disciplinary action under the "sexual misconduct" clause for engaging in sexual activity with their clients. See, *e.g.*, *Parikh v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2012 IL App (1st) 121226. However, there appears to be no legal authority in Illinois straightforwardly establishing a private cause of action against physicians who engage in sexual relations with their patients.

¶ 19    The American Medical Association Code of Medical Ethics addresses the issue in the following terms:

"Opinion 8.14–Sexual Misconduct in the Practice of Medicine

Sexual contact that occurs concurrent with the patient-physician relationship constitutes sexual misconduct. Sexual or romantic interactions between physicians and patients detract from the goals of the physician-patient relationship, may exploit the vulnerability of the patient, may obscure the physician's objective judgment concerning the patient's health care, and ultimately may be detrimental to the patient's well-being.

If a physician has reason to believe that non-sexual contact with a patient may be perceived as or may lead to sexual contact, then he or she should avoid the non-sexual contact. At a minimum, a physician's ethical duties include terminating the physician-patient relationship before initiating a dating, romantic, or sexual relationship with a patient.

Sexual or romantic relationships between a physician and a former patient may be unduly influenced by the previous physician-patient relationship. Sexual or romantic relationships with former patients are unethical if the physician uses or exploits trust, knowledge, emotions, or influence derived from the previous professional relationship." American Medical Association, Code of Medical Ethics, Opinion. 8.14 (1989), *available at* http://www.ama-assn.org/ama/pub/physician-resources/medical-ethics/code-medical-ethics/opinion814.page? (last visited Feb. 26, 2013).

¶ 20    Some commentators have urged courts to fashion such ethics rules into causes of action, so that their violation would establish a damages claim for breach of a quasi-fiduciary duty. See, *e.g.*, Tanya J. Dobash, Note, Physician-Patient Sexual Contact: the Battle Between the State and the Medical Profession, 50 Wash. & Lee L. Rev. 1725, 1746 (1993). Because we find that the amended complaint in this case states a facially valid battery claim–and thus also for violation of the Act–we leave for another day the issue of whether a cause of action in cases like this might lie for breach of fiduciary duty or based solely on the physician-patient relationship.

¶ 21                                        CONCLUSION

¶ 22    In sum, we conclude that the circuit court of Cook County erred in dismissing plaintiff's

amended complaint pursuant to section 2-615 of the Code. For all of the aforementioned reasons, the judgment of the circuit court is reversed and the case is remanded for further proceedings consistent with this opinion.

¶ 23        Reversed and remanded.